IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 24-257 |
| ) | |
| TALYA A. LUBIT ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, and Carolyn J. Bloch, Assistant United States Attorney for said district, and respectfully submits, in accordance with U.S.S.G. § 6A1.2, the instant sentencing memorandum in support of the imposition of a fair and just sentence within the guideline range contemplated by the parties as reflected in the plea agreement.

Following the October 7, 2023, attack perpetrated in Israel by the Hamas terrorist organization, killing and kidnapping hundreds of civilians, and the military conflict that resulted, defendants Talia Lubit and Mohamad Hamad exchanged messages with each other and others, as well as posted messages over social media, in which they shared their support of Hamas and their animus for Israel and those they perceived supported Israel. *See* Exhibits A and B.[1] Defendant Lubit entered into a conspiracy and joint undertaking with her friend and now co-defendant, Mohamad Hamad. They shared a goal and unity of purpose: to intentionally deface and damage the façade of the Chabad of Squirrel Hill (Chabad), religious real property in which Jews prayed, studied, and gathered.

In the darkness of night, in support of Hamas and its ideology, Lubit and Hamad spray-painted the words "Jews 4 Palestine" and the Hamas target symbol, an inverted red triangle, on the

---

[1] Exhibits A and B embody a small sampling of relevant messaging identified during the course of the investigation of this case.

facade of the Chabad in the heart of Squirrel Hill, a neighborhood with a significant Jewish population. Lubit and Hamad did so fully aware that at sunrise Jews associated with the Chabad and from all over the neighborhood would be confronted with their message. Some would be shocked and offended, and others would be frightened, as intended by the defendant. Lubit's conduct is quite serious, and her crimes justify a meaningful punishment.

I.    A.    **Procedural Background**

Defendants Talia Lubit and Mohamad Hamad were first charged by Criminal Complaint on October 25, 2024, with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371, and damaging and defacing religious real property, in violation of 18 U.S.C. §§ 247(c), 247(d)(5), and 2. (Doc. No. 2). On November 19, 2024, a federal grand jury returned a two-count Indictment against defendants Lubit and Hamad which embodied the same offenses. Thereafter, on April 22, 2025, the grand jury returned a nine-count Superseding Indictment. Defendant Lubit was charged at Counts One and Two with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371, and damaging and defacing religious real property, in violation of 18 U.S.C. §§ 247(c), 247(d)(5), and 2, respectively. On May 15, 2025, Lubit entered a knowing and voluntary guilty plea to both Counts One and Two of the Superseding Indictment pursuant to the terms of a plea agreement filed with the Court during the change of plea hearing. (Doc. Nos. 130-131).

Sentencing is scheduled for September 10, 2025, at 10:00 a.m.

B.    **Summary of Offense Conduct**

Following the October 7, 2023, terrorist attack in Israel and the armed conflict that resulted, there were wide-spread, pro-Palestine protests across the United States, to include in the City of Pittsburgh. Incidents of vandalism occurred in the city, targeting residents and businesses for their actual or perceived support of Israel. Defendants Talia Lubit and Mohamad Hamad, from in and

around July 2024 through July 29, 2024, planned and perpetrated acts of vandalism that included damaging and defacing an exterior wall of the Chabad of Squirrel Hill with pro-Hamas messaging. The Chabad is a center for Jewish educational programming with a synagogue for Shabbat and other Jewish religious services, and it is housed in religious real property located at 1700 Beechwood Boulevard, Pittsburgh, Pennsylvania.  Specifically, in the early hours of July 29, 2024, the defendants spray-painted the words "Jews 4 Palestine" and an inverted triangle in red spray paint directly below a sign reading Chabad of Squirrel Hill and a few feet away from a large menorah, a Jewish religious symbol, implanted in the grass.  As the defendants well knew, the inverted red triangle had become a symbol used by Hamas to mark Israeli targets that were about to be attacked.  After the defendants defaced the Chabad, they drove a short distance to the South Side area of Pittsburgh to the Jewish Federation of Pittsburgh and, in similar fashion, defaced an entry sign to its building using red spray paint and stating Jewish Federation (with an arrow) "funds genocide. Heart (Symbol) Jews, Hate Zionism."  The acts of vandalism occurred in connection with both defendants' growing animosity towards Israel and the ongoing war between Israel and Hamas/Palestine, Hamad's expressed desire to fight with his Lebanese "brothers" and to be a martyr in the Islamic faith, and Lubit's developing disdain for Jews.



3



The Chabad reported the incident to the police later that morning. The Pittsburgh Police immediately responded and, in an effort to lessen the harm done, called in personnel to attempt to remove the messaging — July 29, 2024, was a Saturday, the Jewish sabbath, and there would be congregants gathering at the Chabad for services. That, defendant Lubit surely knew.

City of Pittsburgh Police detectives joined forces with agents of the FBI to develop evidence identifying the perpetrators and proving the offenses to which Ms. Lubit has entered a plea of guilty. They retrieved video surveillance footage from the Chabad, the Jewish Federation, and a Walmart store near defendant Hamad's home and license plate reader information maintained by the City and CMU. They located Hamad's residence and conducted surveillance where they identified the dark sedan used the night of the crime and the likely driver, Mohamad Hamad. Search warrants were obtained for Hamad's residence and Lubit's apartment and the electronic devices discovered therein. The contents of the seized devices were forensically analyzed and provided evidence of Hamad's support for Hamas and his hatred for Israel. The analysis revealed conversations over the Signal encrypted messaging application between Hamad and Lubit and their plan for vandalizing Jewish institutions, their growing animosity for Israel and,

4

in Lubit's case, her developing disdain for Jews. It also revealed Google searches for Jewish institutions, including the Chabad. Traffic camera and cell phone tower data established much of the map of the defendants' travels the night of July 28th and early morning of July 29, 2024.

Identified among the conversations between Hamad and Lubit were those during which Hamad expressed his desire to fight with his brothers overseas, in his words, "My ultimate goal in life is Shaheed," or to be a martyr. Signal messages from Lubit to Hamad during the month of July reflect her increasing commitment to Hamas ideology, she spoke of dyeing for her beliefs, betraying her Jewish family "on the other side," wishing to travel to Israel to sneak bomb material into Palestine, and killing Zionists. She spoke of "crossing the line," ending up in jail, and setting off bombs. *See* Exhibit A.

On July 27, 2024, defendant Lubit along with Hamad, wearing a headband and face covering indicative of a Hamas operative, drove past the front of the Chabad to survey the target location and recorded the drive-by on a cellular telephone. On July 28th, 2024, the day before the vandalism at the Chabad and the Federation, Lubit, using the screen name "WARSAW" conversed with Hamad and discussed the photo or symbol they should use to identify a group chat they had formed. Lubit stated, "Fuck Zionists," and suggested the group chat symbol be a morphed Israeli flag with a swastika in the middle where the Jewish star would ordinarily appear.



Lubit stated there are a lot of places I could do this. There are a lot of Jewish institutions around. She agreed to deface the Chabad and acknowledged that the building is used as a synagogue. She

5

suggested making it look like art so that it would not look like vandalism. She stated, "I can literally feel myself starting to see Jews as my enemies."

Hamad purchased one can of Rust-Oleum "Strawberry Fields" red, high-gloss spray paint at a nearby Walmart store. He picked up Lubit at her apartment on Melwood Avenue in the Oakland area of Pittsburgh in the wee hours of July 28th and into July 29th, and they drove together in his car to the Squirrel Hill neighborhood. On July 29, at approximately 1:46 a.m., they arrived in front of the Chabad. Defendant Lubit, the passenger in the car, appeared in the surveillance video running through Chabad's lawn in the direction of the exterior wall where the Chabad sign was hanging and where the graffiti was later found. In her hand, a white can was visible. She was wearing a black head covering, with only eyes visible, a black short-sleeved shirt, with a long-sleeved undershirt, black plants, black shoes, and white socks. She then ran back through Chabad's lawn, passing by the menorah, which is visible in the surveillance footage. After she ran back toward the car, the car immediately pulled away. Fewer than thirty minutes later, defendants Lubit and Hamad, with the same red paint can, vandalized the entrance sign to the Jewish Federation.

Hamad and Lubit returned to their homes. Evidencing her full understanding of the impact of the red triangle she placed upon Chabad's façade, at approximately 12:51 p.m., Lubit sent Hamad another Signal message. "If I saw just black Jews 4 I'd have thought wow. Someone like me. If it was art I'd be relieved… But if it was the triangle I might have thought wow and like been shook. Good learning experience. I'll find out later if I went too far." *Id*.

II.     **Argument**

    A.     **The Sentencing Guidelines**

Although the Supreme Court rendered the federal Sentencing Guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court is still required to "consult [the] Guidelines and take them into account when sentencing." *Id.* at 264. The Supreme Court has

6

directed that district courts "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). The sentencing court, however, "may not presume that the Guidelines range is reasonable." *Nelson v. United States*, 550 U.S. 350, 352 (2009). The "Guidelines should be the starting point and the initial benchmark," but the sentencing court must also "consider all of the § 3553(a) factors" in determining the appropriate sentence. *Gall*, 552 U.S. at 49-50. Ultimately, the sentence imposed must meet a standard of reasonableness. *Booker*, 543 U.S. at 260-61.

As the government indicated in its Position with Respect to Sentencing Factors, it believes that the guidelines calculations set forth in the Final Presentence Investigation Report are accurate. (Doc. No. 160). The government acknowledges that the parties' plea agreement erroneously included a two-level reduction under U.S.S.G. § 4C1.1 (Zero-Point Offender), when, in fact, § 4C1.1(a)(8) explicitly states that the reduction does not apply in cases where the advisory guideline range is calculated pursuant to the provisions of § 2H1.1. As such, it would be improper for the Court to apply a two-level reduction under § 4C1.1.

Similarly, it was an oversight on the government's part to fail to include provisions in the plea letter applying the hate crime enhancement under U.S.S.G. § 3A1.1(a). While the government submits that the Court must consider all relevant facts and information, including those highlighted in this memorandum, regarding the nature and circumstances of the offenses for which defendant Lubit has pleaded guilty in fashioning a fair and just sentence, in keeping with the terms of the plea agreement, it will not seek to establish beyond a reasonable doubt the applicability of the victim-related enhancement at § 3A1.1(a). The government asks this Honorable Court to impose a sentence that reflects the serious nature of defendant Lubit's criminal conduct, and the financial and emotional harm done to the victims and the larger Jewish community.

B.      Analysis of the § 3553(a) Factors

Based on a review of the applicable statutory sentencing factors codified in 18 U.S.C. § 3553(a), a sentence within the applicable guideline range is sufficient but not greater than necessary to achieve the goals of sentencing in this case. The government is not seeking an upward departure and submits that the defendant's mental health condition and history do not warrant a downward variance or departure from that range.

1.  The Nature, Circumstances, and Seriousness of the Offense, and the History and Characteristics of the Defendant

As detailed in the Superseding Indictment, the Final PSIR, and above, defendant Lubit has engaged is conduct that instills fear in unsuspecting people and runs contrary to the protections our laws provide. Defendant Lubit has the freedom of political speech. She does not have the privilege or right to exercise that freedom in ways that desecrate religious and sacred property, or that threaten and instill fear.

Defendant Lubit, as reported in the PSIR, has a history of mental health problems, none of which excuse her involvement in the events of July 29th. It is clear from the evidence, as her communications with defendant Hamad reveal, she understood the nature of her conduct, the likely effect of such conduct, and the consequences of such conduct. In her words, she "crossed the line."

2.  The Need for the Sentence to Promote Respect for the Law, Protect the Public from Further Crimes of the Defendant, and Afford Adequate Deterrence

Lubit's conduct demonstrates a knowing disrespect for the law. In a series of communications and posts, she confirmed her knowledge of the law and her desire to break the law. One can imagine the acts that may have been committed had law enforcement not identified the defendants quickly and disrupted planned events using "bomb materials" and destructive devices. While Lubit will inevitably endeavor to contextualize herself as less culpable than

Hamad, they were true partners in the crimes to which she has entered a plea of guilty. Deterrence is principal here where innocent people are placed in fear.

## III.     Conclusion

For the foregoing reasons, the Court should impose a sentence in keeping with the terms of the plea letter and § 3553(a), reflective of the serious nature of the crimes committed and which provides just punishment for Talia Lubit.

Respectfully submitted,

TROY RIVETTI
Acting United States Attorney

By:     */s/ Carolyn J. Bloch*
CAROLYN J. BLOCH
Assistant United States Attorney
PA ID No. 53430
